# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) JEFFREY T. McCORMICK, individually and as class representative,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No: 12-CV-00215-R** |
| **(2) REMINGTON ARMS COMPANY, INC. and (3) SPORTING GOODS PROPERTIES, INC.,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## PLAINTIFF'S OBJECTION TO DEFENDANT
## REMINGTON ARMS COMPANY'S MOTION TO DISMISS

Steven J. Adams, OBA No. 142 /
    Idaho Bar No. 7935
**FELLERS, SNIDER, BLANKENSHIP,
    BAILEY & TIPPENS, P.C.**
The Kennedy Building
321 South Boston Ave., Suite 800
Tulsa, Oklahoma 74103-3318
Telephone: (918) 925-5835
sadams@fellerssnider.com

Timothy W. Monsees, MO No. 31004
**MONSEES, MILLER, MAYER,
    PRESLEY & AMICK**
A Professional Corporation
4717 Grand Avenue, Suite 820
Kansas City, MO 64112
Telephone: (816) 361-5550
tmonsees@mmmpawlaw.com

Max C. Tuepker, OBA No. 9117
**MAX C. TUEPKER, P.C.**
1322 N. Walker Avenue
Oklahoma City, OK 73103
Telephone: (405) 235-1700
mtuepker@tuepker.com

Richard A. Ramler, MT No. 2256
**RAMLER LAW OFFICE, PC**
202 West Madison Avenue
Belgrade, MT 59714
Telephone: (406) 388-0150
richardramler@aol.com

# TABLE OF CONTENTS

ARGUMENT AND AUTHORITIES ..................................................................................2

1.  Protective Orders and the Defendants' Opposition to Public
    Disclosure of its Own Documents Creates Pleading Challenges
    for McCormick. ..............................................................................................3

2.  McCormick's Complaint States Claims Based on Defects in the
    Model 700 Rifles Manufactured by the Defendants. .................................4

3.  McCormick's Complaint Meets the Pleading Requirements
    Under Fed. R. Civ. P. 8 and Fed R. Civ. P. 12(b)(6) ...............................6

4.  McCormick's Complaint States a Claim for Breach of Implied
    Warranties and the Right to Recover Damages .........................................7

    A.   Manifestation of a Defect is Not Required Under Delaware Law to
         Maintain a Breach of Warranty Claim ............................................7

    B.   Damages are Based on the Rifles' Improper Operation and/or
         Defective Design ............................................................................12

    C.   Notice of a Breach of Implied Warranty Was Provided When
         McCormick's Complaint Was Filed .............................................13

5.  McCormick's Implied Warranty Claim is Not Time-Barred ..................14

6.  The Defendants' Fraudulent Concealment Tolls the
    Statute of Limitations ....................................................................................15

CONCLUSION .........................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aldrich v. McCulloch Props., Inc.,* 627 F.2d 1036 (10th Cir. 1980) .................................. 14

*Amoroso v. Joy Mnfg. Co.,* 531 A.2d 619 (Del. 1987) ...................................................... 16

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................... 6

*Ballen v. Prudential Bache Sec., Inc.,* 23 F.3d 335 (10th Cir. 1994).................................. 15

*Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ........................... 6

*Briehl v. General Motors Corp.,* 172 F.3d 623 (8th Cir. 1999)............................................. 8

*Burnham v. Humphrey Hospitality REIT Trust, Inc.*, 403 F.3d 709 (10th Cir. 2005) ........ 14

*Cartwright v. Viking Industries, Inc.,* 2009 WL 2982887 (E.D. Cal.)................................ 10

*Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S.Ct. 1414 (2012) .......................... 15, 16

*Cuesta v. Ford Motor Co.,* 2009 OK 24, 209 P.3d 278 (Okla. 2009) ................................... 3

*Dalton v. Ford Motor Co.,* 2002 WL 338081 (Del. Super. Ct.) ........................................... 8

*Episcopal Church Home v. Bulb Man, Inc.,* 701 N.Y.S.2d 503
(N.Y. App. Div. 2000) ....................................................................................................... 11

*Harrison v. Levitron Mnfg.,* 2006 WL 2990524 (N.D. Okla.)............................................. 8

*Hertz Corp. v. Friend,* 130 S.Ct. 1181 (2010) .................................................................... 3

*Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210 (10th Cir. 2011) .......................... 6, 7

*King & King Enterps. V. Champlin Petroleum Co.,* 446 F. Supp. 906
(E.D. Okla. 1978)............................................................................................................... 15

*Jantz H. Kinzer and John W. Cherry, Individually and as Class Representatives v. Remington Arms Co., Inc. and Sporting Goods Properties, Inc.,* No. 09-CV-01242-R (W.D. Okla.) ................................................................. 2, 3, 4, 8, 15

*L.B. Trucking, Inc. v. Townsend Grain and Feed Co.* 163 B.R. 709 (Del. 1994) ............. 13

*Lewis v. Wal-Mart Stores, Inc.,* 2005 WL 3263377 (N.D. Okla.) .................................... 16

*Lloyd v. General Motors Corporation,* 916 A.2d 257 (Md. Ct. App. 2007) ............... 10, 11

*Masquat v. Daimler Chrysler Corp.* 2008 OK 67, 195 P.3d 48 ................................. 14, 15

*Mercedes Benz v. Norman Gershman, Inc.,* 596 A.2d 1358 (Del. 1991) ......................... 13

*O'Neil v. Simplicity, Inc.,* 574 F.3d 501 (8th Cir. 2009) ................................................... 8

*Quality Air Services, LLC v. Milwaukee Valve Company,* 2009 WL 4070949 (D.D.C.) ........................................................................................................................... 9

*Robbins v. Oklahoma,* 519 F.3d 1242 (10th Cir. 2008) ................................................. 6, 7

*Slocum v. Claremore,* 2009 WL 2835399 (N.D. Okla.) ..................................................... 6

*Smith v. DaimlerChrysler Corp.,* 2002 WL 31814534 (Del. Super. Ct.) ..................... 7, 13

*Speakman Co. v. Harper Buffing Machine Co.,* 583 F. Supp. 273 (Del. 1984)................. 13

*Ysbrand v. DaimlerChrysler,* 2003 OK 17, 81 P.3d 618 ................................................... 3

*Zurn Pex Plumbing Liability Litigation,* 644 F.3d 1296 (8th Cir. 2011) ............................ 9

## STATUTES

CGSA §42A-2-725 ............................................................................................................. 8

6 Del. C §2-314 ..................................................................................................... 6, 7, 8, 12

6 Del. C §2-607 ................................................................................................................ 14

6 Del. C §2-607(3)(a)............................................................................13

6 Del. C §2-714............................................................................10, 11

6 Del. C. §2-725............................................................................7, 8, 14

6 Del. C. §2-725(4)............................................................................16

12 O.S. §105............................................................................14

12A O.S. §2-725(2)............................................................................14

## RULES

Fed. R. Civ. P. 8............................................................................6, 7

Fed. R. Civ. P. 9(b) ............................................................................6

Fed. R. Civ. P. 12(b)(6)............................................................................6, 8, 13

Plaintiff, Jeffrey T. McCormick ("McCormick") or ("Plaintiff"), objects to the Motion to Dismiss Combined with Memorandum of Law in Support of its Motion to Dismiss [Doc. No. 14] filed by Remington Arms Company, LLC ("Remington") and Sporting Goods Properties, Inc. ("SGPI") (collectively Defendants).

## ARGUMENT AND AUTHORITIES

The Defendants' description of the McCormick Complaint as, "wasteful re-litigation of issues identical to those this Court has already considered" is inaccurate. The Court has previously evaluated express and implied warranty claims alleging the Defendants manufactured and sold high-powered rifles that fired, and still fire, bullets before the trigger is pulled[1] for the periods before 1985 and after June 24, 1996, when Defendants' principal places of business were in other states. However, this Court has not previously evaluated claims against Remington and SGPI for breach of warranties during the 1985 to 1996 time period when the Defendants' principal offices were located in the State of Delaware.

In the *Cherry* Case, this Court entered an Order [Doc. No. 67] which provided guidance for several issues raised by the Defendant's Motion to Dismiss including: the Defendant corporations' principal places of business determine the applicable substantive law; Oklahoma's conflict of law rules mandate a five (5) year limitations on action; and equitable tolling of statutes of limitation may create questions of fact. The Court correctly

_____

[1] *Jantz H. Kinzer and John W. Cherry, Individually and as Class Representatives v. Remington Arms Co., Inc. and Sporting Goods Properties, Inc.,* No. 09-CV-01242-R (W.D. Okla) (the "*Cherry* Case").

determined each of these issues in its Order [Doc. No. 67] and it is Defendants who are seeking re-litigation of issues in their Motion to Dismiss. The Defendants do not raise the issue of privity of contract as they apparently recognize privity of contract is not required to assert a claim for breach of implied warranty under Delaware law. See Brief of Plaintiffs on Choice of Law/Conflict of Law in the *Cherry* case, Section V.B. at page 18 [Doc. No. 60].

The Defendants' criticism of *Ysbrand v. DaimlerChrysler*, 2003 OK 17, 81 P.3d 618 (2003) is incorrect. The Court's Order [Doc. No. 67] correctly analyzed *Ysbrand* (Oklahoma adopted the most significant relationship test for breach of warranty claims in a class action setting)[2] and the subsequent cases of *Cuesta v. Ford Motor Co.,* 2009 OK 24, 209 P.3d 278 (Okla. 2009) and *Hertz Corp. v. Friend,* ____ US ____, 130 S. Ct. 1181 (2010). Following the Court's reasoning as stated in its Order [Doc. No. 67], Delaware law governs McCormick's claims.

1.     **Protective Orders and the Defendants' Opposition to Public Disclosure of its Own Documents Creates Pleading Challenges for McCormick.**

McCormick believes the allegations contained in his Complaint are sufficient to state claims based on implied warranties of merchantability. In their Motion to Dismiss, Defendants claim McCormick failed to sufficiently allege facts of fraudulent concealment for equitable tolling of the five (5) year limitation on actions. Because of extensive document discovery in the *Cherry* case and extensive document discovery in personal injury and

---

2 Order [Doc. No. 67] in which the Court observed concerning the significant relationship test: "Such a test gives predictability to the issue of what law will apply, and simplifies

property damage cases spanning over 30 years, McCormick's counsel already possess Remington's documents which prove fraudulent concealment. However, McCormick's ability to more specifically allege all known facts establishing fraudulent concealment by Defendants is currently limited by protective orders in the *Cherry* case and other lawsuits against Remington and SGPI. Unless agreed to by Defendants, even a request for an *in camera* review here would be improper until relief from the protective order in the *Cherry* case at a minimum, and maybe in other proceedings, is obtained in order to allow the more specific allegations to be asserted here.

## 2. McCormick's Complaint States Claims Based on Defects in the Model 700 Rifles Manufactured by the Defendants.

The claims of Plaintiff McCormick, and the claims of each putative Class member ("Class Claims"), are based on ownership of a Remington Model 700 bolt-action rifle which has a trigger and safety device known as the "Walker fire control"[3] ("Rifles"). The Class Claims are based on the allegation the Rifles are not merchantable because the Rifles contain an improperly operating and/or defectively designed Walker fire control. All calibers of Rifles of the Model 700 are included in the Class Claims.[4] Plaintiff McCormick purchased a new Remington Model 700 bolt-action Rifle equipped with the Walker fire control for his personal use in 1992. McCormick purchased his Rifle during the 1985 to June 24, 1996 time

---

consideration of the applicable law." Order, page 6.

3 The Walker fire control is a patented design, US Patent No. 2,514,981, "Firing Mechanism for Firearms".

4 The Model 700 Rifles are manufactured and sold in various calibers, all of which contain

period when the principal place of business of SGPI and Remington was in Delaware ("Class Period"). SGPI maintained its principal place of business in Delaware between 1985 and December 1, 1993. Remington maintained its principal place of business in Delaware between December 1, 1993 and June 24, 1996. Complaint, Paragraphs 1, 2 and 5 [Doc. No. 1].

Implied warranties of merchantability, including warranties of fitness for ordinary purpose, apply to the Rifles included in the Class Claims purchased during the Class Period. The Class Claims are limited to the time period beginning in 1985 until June 24, 1996. The Class is comprised of as many as 1,100,000 persons based on the Rifles manufactured and sold by SGPI and Remington during the Class Period.[5]

During the Class Period, each sale of a new Model 700 involved an accompanying warranty of merchantability implied by law. *See* 6 Del. C §2-314. To be merchantable, the

---

the Walker fire control.

[5] SGPI and Remington manufactured and sold Model 700 Rifles in Delaware from 1985 to 1996. Effective January 1, 1985, SGPI moved its principal place of business from Connecticut to Delaware. Between 1985 and 1993, SGPI continued to manufacture and sell Rifles containing the Walker fire control. Effective December 1, 1993, Remington purchased from SGPI, among other things, the business previously carried on by SGPI of manufacturing and selling, repairing, and servicing firearms, including the Remington Model 700. In conjunction with other agreements between Remington and SGPI, Remington agreed to assume some or all of the responsibility and liability for the claims asserted against SGPI. As such, to the extent Plaintiff and the class establish their claims against SGPI, Remington likewise has liability for the Class Claims. The claims against Remington are based upon its contractual assumption of liability and/or duty of indemnification by it for the Class Claims asserted against SGPI and upon Remington's manufacture of Rifles between December 1, 1993 and June 24, 1996. Complaint, Paragraphs 1, 2 and 5 [Doc. No. 1]; Defendants'

Rifles must be fit for the ordinary purpose for which they are used. To be merchantable, each Model 700 Rifle must operate safely and not fire until the trigger is pulled.

SGPI and Remington impliedly warranted to McCormick and each putative class member who purchased Rifles beginning in 1985 until June 24, 1996, that the new Model 700 Rifle purchased by them would not fire without a trigger pull. Rifles that fire bullets before the trigger is pulled are not merchantable and are not fit for their ordinary purpose.

### 3. McCormick's Complaint Meets the Pleading Requirements Under Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 8, the degree of factual specificity necessary to establish a plausible claim and fair notice depends on the type of case. *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008). Rule 8 does not demand detailed factual allegations, *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009), and does not impose pleading requirements like those imposed by Fed. R. Civ. P. 9(b). *Id.* at 1954. While a complaint comprised simply of "labels and conclusions" is insufficient, Rule 8 does not require "heightened fact pleading." *Slocum v. Claremore,* No. 08-CV-756, 2009 WL 2835399 at *3 (N. D. Okla. Aug. 28, 2009). *See also, Ashcroft v. Iqbal; Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 127 S. Ct. 1955 (2007). The Tenth Circuit recognized current pleading requirements as, "middle ground between heightened fact pleading . . . and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action," *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214

Motion to Dismiss, Footnote 2 [Doc. No. 14].

6

(10th Cir. 2011), citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Plaintiff's Complaint [Doc. No. 1] sufficiently provides notice to the Defendants and sufficiently pleads the case as measured by the pleading requirements of the federal rules and cases interpreting the pleading rules.

Defendants do not identify any specific allegations which they claim are not adequate to state a plausible claim or provide fair notice. McCormick's Complaint contains allegations which exceed "mere labels and conclusions" or "formulaic recitations of the elements of a cause of action*." See Kansas Penn Gaming*, 656 F.3d at 1214.

**4.      McCormick's Complaint States a Claim for Breach of Implied Warranties and the Right to Recover Damages.**

Delaware courts have recognized the §2-314 requirements for an implied warranty claim: "a plaintiff must show that (1) a merchant sold the goods, (2) which were defective at the time of sale, (3) causing injury to the consumer, (4) the proximate cause of which was the defective nature of the goods, and (5) that the seller received notice of the injury." *Smith v. DaimlerChrysler Corp.*, No. Civ.A. 94C-12-002JEB, 2002 WL 31814534, at \*4 (Del. Super. Ct. Nov. 20, 2002); Del. C. §2-314.

**A.      Manifestation of a Defect is not Required under Delaware Law to Maintain a Breach of Warranty Claim.**

Under Delaware's version of the UCC, a warranty is breached at the time of delivery, 6 Del. C. §2-725, and there is no statutory requirement for manifestation of a defect before a party may sue. No Delaware court has interpreted §2-725 to require a manifested defect for

breach of implied warranty claims. The Court reached the same result in its Order [Doc. No. 67] in the *Cherry* case based on Connecticut's version of §2-725. CGSA §42A-2-725.

The cases relied on by Defendants do not address the issues confronting McCormick and the Model 700 Rifle class in the context of the policy of construing the UCC broadly to protect the buyer/consumer. McCormick and the Model 700 Rifle Class face unique safety issues created by a defective product which can cause serious injury or death. The policy of protecting consumers is emphasized by the importance of protecting rifle-owning consumers from dangerous guns which fire before the trigger is pulled. Recognizing the important policy of protecting consumers, no Delaware court has required a §2-314 "injury" to include a physical injury or that the product malfunctioned. Defendants claim McCormick must plead manifestation of a defect in his Model 700 Rifle before he has standing to sue. The cases cited by the Defendants in support of their arguments concerning manifestation of injury and the Plaintiffs' standing to sue are not applicable to McCormick's claim governed by Delaware law.[6]

---

[6] *Harrison v. Levitron Mnfg.* was decided under Oklahoma law which requires a plaintiff experience a manifestation of a defect before a warranty claim is asserted.
*Dalton v. Ford Motor Co.* is an unpublished opinion, which dismissed plaintiff's warranty claims based on the statute of limitations and a negligence claim due to speculative damages (potential loss of resale value).
*Briehl v. General Motors Corp.* was decided based upon the law of several jurisdictions; however, Delaware law was not relied upon or cited by the court.
*O'Neil v. Simplicity, Inc.* dismissed a warranty action for only alleging a "risk" of injury, but it did not require a manifestation of the alleged defect in the bed.

Several other courts have recognized the Uniform Commercial Code provides a remedy for economic loss without manifestation of a defect.

In *Zurn Pex Plumbing Liability Litigation*, 644 F.3d 1296 (8th Cir. 2011), a more recent pronouncement by the 8th Circuit than *Briehl* (albeit applying the law of a different jurisdiction), the Court affirmed class certification for a group of homeowners who alleged a brass fitting used in a plumbing application was defective in design and application. The Court affirmed class certification and found the plaintiffs pleaded and supported more than mere "risk" of developing a problem with the brass fittings. The Court found the homeowners alleged a current harm because they alleged the brass fittings contained a defect upon installation. In *Zurn*, The Eighth Circuit allowed the *Zurn* plaintiffs to proceed based on allegations of defect even though the defect was not manifested and also over the objection that plaintiffs there had no standing. Similarly, McCormick's Complaint alleges the Walker fire control is a defect contained in every Model 700 Rifle. Complaint, Paragraphs 10, 11 and 12 [Doc. No. 1]. This, along with the allegations as to damage, is sufficient.

The United States District Court for the District of Columbia, in *Quality Air Services, LLC v. Milwaukee Valve Company*, 2009 WL 4070949 (D.D.C. November 25, 2009), decided the issue now before this Court. In *Quality Air*, the plaintiff purchased 13,320 valves which it installed in HVAC systems in various buildings. Sixteen of the valves broke and caused leaks and flooding in the buildings. The plaintiff claimed breach of express and

implied warranty with respect to all 13,320 valves and sought as a remedy the cost of replacement. *Id.* The plaintiff sought damages for valves that had not yet broken. *Id.* at *4.

With respect to the warranty claims, the court stated the issue before it to be: "[C]an a plaintiff incur damages under the UCC when it receives an allegedly defective product but the product has not failed to perform as intended?" *Id.* at *5. The court stated:

> If a plaintiff were to establish that the Hammond 8911 valves are defective, even if they have not yet failed, it could show that defendant breached the implied warranty of merchantability with respect to the still-functioning valves.

at *7 (emphasis added). Relying on §2-714, the court noted, "The harm from a breach of express warranty is not simply the injury caused by the nonconformity, but the non-conformity itself." *Id.; See Cartwright v. Viking Industries, Inc*., 2009 WL 2982887 (E. D. Cal. September 14, 2009) (breach of warranty does not require proof that product has malfunctioned).

In *Lloyd v. General Motors Corporation,* 916 A.2d 257 (Md. Ct. App. 2007), the court addressed the express language in § 2-714. *Id.* at 285-86. *Lloyd* was a class action in which the "major issue in [the] case [was] whether the cost to repair defective seat backs, which allegedly have a tendency to collapse in rear impact collisions, causing, in some cases, serious bodily injury or death to drivers and/or passengers ... constitutes a cognizable injury, in the form of economic loss for claims sounding in tort, contract, and consumer protection." *Id.* at 262. The court concluded that the injury contemplated under §2-714 for breach of an implied warranty "includes the cost to repair the defect." *Id.* at 288. The court also stated:

Although a plaintiff must plead, under a theory of breach of implied warranty, that the seller's breach was the proximate cause of injury, the language [in §2-714] does not announce a rigid definition of injury to include only actual bodily injury or product malfunction.

*Id.* at 287. After reviewing various cases, the *Lloyd* court concluded:

These cases buttress our determination that petitioners are not required to plead that they have suffered a physical bodily injury in order to prove a breach of warranty. Nor must a plaintiff prove that the product actually malfunctioned. To the contrary, a plaintiff need only plead that the automobiles were sold with a defect and that the defect rendered the goods unfit for ordinary and safe use. In other words, the injury arises, ipso facto, from the breach, creating a "gap" of sorts between what the consumer bargained for and what the consumer actually received. Only by receiving recompense to fill the gap will the consumer be restored to the position where he or she has the full benefit of his or her bargain - and be made whole.

*Id.* at 290 (emphasis added). The *Lloyd* court addressed and distinguished the same cases on which Defendants now rely on the basis that the "injury" in those cases was based on potential and there was no empirical or anecdotal evidence of actual injuries. *Id.* at 291- 93. McCormick alleges Defendants have received thousands of complaints about Model 700 firings without a trigger pull, some of which resulted in personal injury or death. Just as the plaintiffs in *Lloyd* did not have to wait for a rear-end collision to assert a warranty claim, the Plaintiffs need not wait for a Rifle to fire before the trigger is pulled to have a breach of warranty claim.

*Episcopal Church Home* v. *Bulb Man, Inc.,* 710 N.Y.S.2d 503 (N.Y. App. Div. 2000), is also instructive on the issue of manifestation of a defect. In *Bulb Man,* the plaintiff asserted a breach of implied warranty claim arising out of defendant's sale of ballasts for light

fixtures. *Id.* at 504. The court determined defendant breached its warranty as to each ballast based on the fact that the ballasts had an accepted failure rate of 10% and plaintiff presented evidence that at least 15% of the ballasts failed. *Id.* Plaintiff did not have to present evidence that each ballast failed in order to establish that each ballast did not conform to defendant's implied warranty. By the same reasoning, it should not be necessary under Delaware law for McCormick and the putative Class to show that each Model 700 Rifle they purchased manifested a defect by firing before the trigger was pulled.

**B.    Damages Are Based on the Rifles' Improper Operation and/or Defective Design.**

McCormick alleged sufficient loss compensable under the provisions of the Delaware Uniform Commercial Code. Complaint, Paragraphs 21 and 22 [Doc. No. 1]. Delaware provides the measure of damages for breach of warranty as the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 6 Del. C. §2-314.

Damages of a "different amount" may be the cost to repair the warranty defect. If the Model 700 Rifle with the Walker fire control is defective as a result of a propensity to fire without a trigger pull, McCormick and the Class members may be entitled to damages for the lost value or the cost to repair, which loss is not premised on any manifestation of the defect, bodily injury, or property damage. Although McCormick's Rifle has not to his knowledge fired without a trigger pull, his Rifle contains the defective Walker fire control. If his proof

of the defective Walker fire control is sufficient, McCormick and the class members can recover the loss in value, or the cost to repair the Rifle by replacing the defective Walker fire control.

McCormick's Complaint adequately states: "the special circumstances are such that the cost to repair the improperly operating and/or defective fire control in the Model 700, plus interest, will likely be the appropriate measure of damage." Complaint, Paragraph 19 [Doc. No. 1].

### C. Notice of a Breach of Implied Warranty was Provided when McCormick's Complaint was Filed.

McCormick's Complaint alleged his purchase of his Rifle and he is not required to allege additional notice to the Defendants. Complaint, [Doc. No. 1]. Notice of the defect within a "reasonable time" is a condition precedent to an implied warranty claim. 6 Del. C. §2-607(3)(a). The question of reasonable notice is a question of fact for the jury. *Smith v. DaimlerChrysler Corp.*, 2002 WL 31814534 (Del. 2002) (unpublished opinion); *Mercedes Benz v. Norman Gershman, Inc.*, 596 A.2d 1358 (Del. 1991).

McCormick notified the Defendants of his warranty claim by filing his Complaint when he became aware of the defective Walker fire control. Delaware courts have not required any particular form of notice to satisfy §2-607. *L.B. Trucking, Inc. v. Townsend Grain and Feed Co.,* 163 B.R. 709 (Del. 1994) (notice within a reasonable time after discovery of a defective product); *Speakman Co. v. Harper Buffing Machine Co.,* 583 F.

Supp. 273 (Del. 1984) ("courts applying §2-607 accordingly have not insisted on any particular method or content of notification.").

**5.      McCormick's Implied Warranty Claim is Not Time-Barred.**

Although, Defendants seek dismissal of Plaintiff McCormick's claims based on the statute of limitations, the statute of limitations is an affirmative defense, and it may be resolved on a Rule 12(b)(6) motion to dismiss only "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich* v. *McCulloch Props., Inc.,* 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Pursuant to 12 O.S. §105, "[t]he period of limitation applicable to a claim accruing outside of this state shall be that prescribed either by the law of the place where the claim accrued or by the law of this state, whichever last bars the claim." Oklahoma has a five year statute of limitations period for warranty claims under the Uniform Commercial Code, while Delaware adopted a four year period. Oklahoma and Delaware adopted the same version of the UCC regarding accrual of a claim for breach of warranty:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

> 12A O.S. § 2-725(2); 6 Del. C. §2-725.

This court must apply Oklahoma law in determining the limitations period applicable to each Plaintiff's claim. *Burnham* v. *Humphrey Hospitality REIT Trust, Inc.,* 403 F.3d 709,

14

712 (10th Cir. 2005) ("A federal court sitting in diversity applies state law for statute of limitations purposes."). Under the analysis in *Masquat* v. *Daimler Chrysler Corp.*, 195 P.3d 48, 54 (Okla. 2008), Oklahoma's five year limitation period applies to the claim of each Plaintiff. In addition, the tolling provisions of Oklahoma law apply to Plaintiff McCormick's claim, and the statute of limitations is tolled when a defendant conceals its conduct. See Order, at pp. 9-11, in the *Cherry* case [Doc. No. 67]. McCormick's Complaint, in paragraphs 11, 12, 13, 14, 15 and 16, sufficiently alleges facts to support a plausible basis for the tolling of the statute of limitations [Doc. No. 1].

6.    **The Defendants' Fraudulent Concealment Tolls the Statute of Limitations.**

The statute of limitations was tolled by Defendants' fraudulent concealment. The question of fraudulent concealment is a question of fact which should be resolved by a jury after evidence is presented. McCormick acknowledges his burden to plead and prove fraudulent concealment. To toll the statute of limitations, McCormick must show: (1) defendant's use of fraudulent means to conceal plaintiff's cause of action from him; (2) successful concealment from plaintiff; and (3) that plaintiff did not know or by the exercise of due diligence could not have known that he might have a cause of action. *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994); *King & King Enterps. v. Champlin Petroleum Co.*, 446 F. Supp. 906, 910-11 (E.D. Okla. 1978). Fraudulent concealment requires a plaintiff to prove that "(1) that he has been pursuing his rights diligently; and (2) that some *extraordinary circumstances* stood in his way." *Credit Suisse*

15

*Sec. (USA) LLC v. Simmonds*, 132 S.Ct. 1414 (2012). Further, "[t]he mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute [of limitations]. There must be something more; some *actual artifice* to prevent knowledge of the facts; some *affirmative act of concealment or some misrepresentation* to exclude suspicion and prevent inquiry." *Lewis v. Wal-Mart Stores, Inc.*, 02-CV-0944 CVE-FHM, 2005 WL 3263377 (N.D. Okla.), at *8.

The Defendants have known since the late 1940s the Model 700 Rifles could fire without a trigger pull. Despite this knowledge, the Defendants failed to fix the problem and failed to warn purchasers of the Rifles. The Defendants have affirmatively acted to conceal the defect and have failed to disclose the defect to McCormick and other Rifle owners. Complaint, Paragraphs 13, 14, 15, 16, 17 [Doc. No. 1]. Delaware also recognizes tolling of the statute of limitations based on a defendant's conduct. *Amoroso v. Joy Mnfg., Co.*, 531 A.2d 619 (Del. 1987); 6 Del. C. §2-725(4).

As previously noted, protective orders entered in other cases and the Defendants' opposition to public disclosure of its own documents and the content of the documents limits McCormick's ability to more specifically plead all known facts concerning fraudulent concealment.[7] Despite this limitation on McCormick's pleading, the Complaint sufficiently states facts to support a plausible claim of fraudulent concealment.

---

[7] Defendants claim McCormick should be required to plead the "who, what, when, where and how" of fraudulent concealment. Under the circumstances of this case, McCormick has sufficiently pleaded fraudulent concealment.

## CONCLUSION

Review of the Complaint shows McCormick made sufficient allegations to establish a plausible claim and provide fair notice of breach of implied warranties by reason of improper operation and/or defective design in the Rifles. The facts alleged in McCormick's Complaint [Doc. No. 1] state a claim for which relief may be granted to McCormick and to the putative class. The facts alleged and the reasonable inferences drawn from the factual allegations provide sufficient notice to the Defendants of the Class Claims. Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

By:  */s/Steven J. Adams*_____
Steven J. Adams, OBA No. 142 /
   Idaho Bar No. 7935
**FELLERS, SNIDER, BLANKENSHIP,**
   **BAILEY & TIPPENS, P.C.**
The Kennedy Building
321 South Boston Ave., Suite 800
Tulsa, Oklahoma 74103-3318
Telephone:  (918) 925-5835
Facsimile:   (918) 583-9659

sadams@fellerssnider.com

- and-

Max C. Tuepker, OBA No. 9117
**MAX C. TUEPKER, PC**
1322 N. Walker Avenue
Oklahoma City, OK  73103
Telephone:  (405) 235-1700
Facsimile:   (405) 235-1714
mtuepker@tuepker.com

-and-

Timothy W. Monsees, MO No. 31004
**MONSEES, MILLER, MAYER,**
  **PRESLEY & AMICK**
A Professional Corporation
4717 Grand Avenue, Suite 820
Kansas City, MO 64112
Telephone: (816) 361-5550
Facsimile : (816) 361-5577
tmonsees@mmmpawlaw.com

-and-

Richard A. Ramler, MT No. 2256
**RAMLER LAW OFFICE, PC**
202 West Madison Avenue
Belgrade, MT 59714
Telephone: (406) 388-0150
Facsimile : (406) 388-6842
richardramler@aol.com
**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 22nd, 2012, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Robert H. Alexander, Jr.
alexattys@productlaw.com
John J. Love
jjlove@productlaw.com
***Counsel for Remington Arms Company, Inc.***
***And Sporting Goods Properties, Inc.***

Max C. Tuepker
mtuepker@tuepker.com
Timothy W. Monsees
tmonsees@mmmpalaw.com
Richard A. Ramler
richardramler@aol.com
***Counsel for Plaintiff***

*/s/Steven J. Adams*
Steven J. Adams